IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL INDICTMENT |
| v. | NO. 1:13-CR-157-WSD |
| JASPER JOHN BERKLEY, | |
| Defendant. | |

## FINAL REPORT AND RECOMMENDATION

Defendant Jasper John Berkley ("Defendant") is charged with conspiracy to distribute a controlled substance, in violation of 21 U.S.C. §§ 846 and 841(a) and (b); two counts of possession with the intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a) and (b); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and being a convicted felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g) and 924(a). Pending before this court is Defendant's Motion to Suppress Evidence and Motion to Sever (Docs. 23 and 24). Defendant moves to suppress evidence seized from a Buick Lacrosse that he was driving on April 15, 2013. An evidentiary hearing on the suppression motion was held before me on August 14, 2013. All transcript references ("Tr.___") are to the transcript of that hearing. My recommendation follows.

AO 72A
(Rev.8/82)

## I. **FACTS**

On the evening of April 14, 2013, Detective Ronnie Viar ("Det. Viar") with the DeKalb County Police Department was working in his marked police vehicle. (Tr. 17-20). Det. Viar was assigned to assist narcotics detectives with their investigations. (Tr. 6). Det. Viar is a trained handler of a narcotics detection dog ("K-9") named "Basa," and he had Basa with him in his patrol car that evening. Det. Viar and Basa are certified through the National Narcotics Detection Dog Association to detect marijuana, cocaine, heroin, and methamphetamine. (Tr. 6-10, 15).

At about 10:00 p.m., Det. Viar was asked by narcotics detectives to see if he could develop probable cause to stop a 2008 Buick Lacrosse that would be driving south on Interstate 85 ("I-85") in DeKalb County. (Tr. 17-20, 36). The narcotics detectives provided Det. Viar with the identifying information of the Buick. (Tr. 17-18; Gov't Ex. 14).

Det. Viar visually located the Buick traveling south on I-85 and pulled in a short distance behind it in his marked patrol car. (Tr. 21). Det. Viar "paced" the Buick to determine how fast it was going. (Tr. 20-21). Det. Viar described pacing as a technique whereby he drives a short distance behind another vehicle and follows it at

2

a constant speed to determine the vehicle's speed. (Tr. 21). Det. Viar paced the Buick for a couple of miles and came to the conclusion that it was traveling at 70 miles per hour. (Tr. 21). The Buick was traveling with the normal flow of traffic. (Tr. 39). However, the speed limit in that area is 55 miles per hour. (Tr. 21).

Det. Viar activated his blue lights and stopped the Buick at approximately 10:20 p.m. (Tr. 22). After the stop, Det. Viar was assisted by another DeKalb County police officer, Mark Taylor. (Tr. 67-73). Det. Viar approached the driver (Defendant), asked for his driver's license, and told him that he had been stopped for speeding. (Tr. 23, 47). For safety reasons, Det. Viar asked Defendant to step out of the Buick and come to the side of the road. (Tr. 23).

Det. Viar then asked Defendant if he had any drugs or guns in his car. Defendant said that he did not. (Tr. 63-64). Det. Viar then asked Defendant if he could search the car, and Defendant responded, "Go ahead." (Tr. 64).

Det. Viar then retrieved Basa from his patrol car and had Basa conduct an open-air sniff around the exterior of the Buick. Basa alerted on the driver's side door to the odor of a controlled substance. (Tr. 25). Det. Viar then turned the car off, placed Basa inside the Buick, and commanded her to search the vehicle. Once inside the car, Basa alerted to the floor behind the center console. (Tr. 26). Det. Viar put Basa back into

3

the patrol car and began to search the Buick; however, he did not see any drugs in the visible areas of the vehicle.

Because the dog had alerted and Det. Viar knew that there was an ongoing investigation, Det. Viar called a sergeant involved in the narcotics investigation to verify that the sergeant wanted him to do a more in-depth search. The sergeant indicated that Det. Viar should search the entire vehicle. (Tr. 27-28). Det. Viar then began looking for a hidden compartment. He eventually pulled down the back seat armrest and a piece of plastic behind it, and located illegal drugs and a gun in a hidden compartment of the vehicle. (Tr. 28-29). Defendant was then placed under arrest. The time from the activation of the blue lights to the location of the contraband was approximately 20 minutes. (Tr. 22, 34, 72).

Defendant was not the registered owner of the Buick. (Tr. 19-20; Gov't Ex. 14). Additional facts are discussed in context below.

## II. DISCUSSION

### A.    Motion to Suppress Evidence

#### 1.    Standing

The Government first argues that Defendant does not have standing[1] to contest the search of the Buick.  The Government argues that because Defendant was not the registered owner of the Buick, he bore the burden of establishing that he was lawfully in possession of the vehicle, and he did not meet that burden.  (Doc. 51 at 11-12). Defendant argues in his reply brief that he has standing to challenge the stop of the vehicle (as distinguished from the search of the vehicle) without showing lawful possession.  (Doc. 53 at 3).  As discussed below, Defendant also argues that he has standing to challenge the search.

I agree with Defendant that he has standing to challenge the stop of the Buick. A person is seized when the vehicle in which he is riding is stopped by the police.  See Brendlin v. California, 551 U.S. 249, 255, 127 S. Ct. 2400, 2406 (2007).  He may

---

[1] As the Government points out, the Supreme Court has disapproved of the term "standing."  See Doc. 51 at 10 n.1 [sic], citing Rakas v. Illinois, 439 U.S. 128, 139-40 (1978).  Nevertheless, to be consistent with the terminology used by the parties, the Court will use the word "standing" as a shorthand term for the "existence of a privacy or possessory interest sufficient to assert a Fourth Amendment claim."  United States v. Daniel, 982 F.2d 146, 149 n.2 (5th Cir. 1993) (citation omitted).

challenge that seizure without a showing that he is in lawful possession of the vehicle. Id. (holding that passengers may also challenge the constitutionality of a stop of a vehicle in which they are riding).

A closer question is presented on the issue of whether Defendant has standing to challenge the search of the Buick that followed the stop. Defendant argues that the court should infer that he was in lawful possession of the Buick because he was the driver and sole occupant of the vehicle, and the vehicle had not been reported stolen. He also argues that he has standing to challenge the search because his consent to search stemmed from the unlawful stop.

Because the Government has not addressed the issue and effect of Defendant's standing to contest the stop, the parties have not cited any Eleventh Circuit authority that squarely decides the standing-to-search issue presented here. As the standing issue does not affect the outcome of the motion, I will assume, without deciding, that Defendant has standing to challenge the search of the Buick.

### 2.     Det. Viar had probable cause to stop Defendant's vehicle for speeding

"Under the Fourth Amendment, a decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation occurred, ... and

AO 72A
(Rev.8/82)

an officer's motive in making the traffic stop does not invalidate what is otherwise objectively justifiable behavior under the Fourth Amendment." United States v. Simmons, 172 F.3d 775, 778 (11th Cir. 1999) (citing Whren v. United States, 517 U.S. 806, 810, 116 S. Ct. 1769 (1996)) (internal quotation marks and other citations omitted). Thus, if Det. Viar had probable cause to believe that Defendant was speeding, his stop of Defendant's vehicle was lawful even though his true motivation for the stop was to assist in a drug investigation.

To establish probable cause, the Government relies on Det. Viar's testimony that he paced Defendant's vehicle and, based on his pacing, Det. Viar concluded that Defendant was traveling at 70 miles per hour. Defendant argues that the Government's evidence is insufficient to establish probable cause because Det. Viar did not use a radar gun or other verified method to determine Defendant's speed, Defendant was in the middle lane of traffic and was proceeding with the normal flow of traffic, and Det. Viar did not testify whether he had any training or experience to determine Defendant's speed by pacing.

A law enforcement officer may pull over a motorist for suspected speeding even when the officer is acting only on the basis of his visual observations. Radar or other speed detection devices are not necessary to justify a stop for speeding. See United

7

States v. Monzon-Gomez, 244 F. App'x 954, 959 n.3 (11th Cir. 2007) (rejecting defendant's argument that the officer needed "some type of radar device" to justify a traffic stop for speeding; for Fourth Amendment purposes, "the question is simply whether a law enforcement officer has sufficient cause to believe that a traffic law has been violated, not whether such a violation can be successfully prosecuted in court.").

Here, Det. Viar did more than rely on his visual observations. He relied on pacing -- *i.e.*, estimating the speed of Defendant's vehicle by matching it with the speed of his own vehicle. The Eleventh Circuit and other federal courts have concluded that an officer has probable cause to stop a vehicle for speeding based on pacing. See, e.g., United States v. Rowls, 402 F. App'x 467, 468-69 (11th Cir. 2010); United States v. Puckett, 422 F.3d 340, 342-43 (6th Cir. 2005); United States v. Garrido-Santana, 360 F.3d 565, 571-72 (6th Cir. 2004); United States v. White, 81 F.3d 775, 777-78 (8th Cir. 1996); United States v. Stapleton, 10 F.3d 582, 583-84 (8th Cir. 1993); United States v. Mohamed, 546 F. Supp. 2d 1324, 1330 (M.D. Fla. 2008). Moreover, pacing is relatively simple to understand and execute. I find that no evidence of special training or experience was necessary for Det. Viar to estimate Defendant's speed based on pacing, as Det. Viar described it. In sum, I reject Defendant's arguments and find that Det. Viar had probable cause to believe that Defendant's vehicle was speeding.

### 3. Detective Viar did not exceed the scope of a permissible traffic stop

In order to satisfy the reasonableness requirement of the Fourth Amendment, an officer's actions during a traffic stop must be reasonably related in scope to the circumstances that justified the interference in the first place, and the duration of the stop must be limited to the time necessary to effectuate the purpose of the stop. United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001). Defendant argues that Det. Viar exceeded the scope of a permissible traffic stop when he "without even beginning the procedures of issuing a citation or a warning for speeding, immediately requested that [Defendant] step out of the vehicle, asked if there was any contraband in the vehicle, asked to search the vehicle and then retrieved his dog to conduct an open air sniff." (Doc. 53 at 8).

Binding authority requires the rejection of Defendant's arguments. An officer who makes a valid traffic stop is entitled to require the driver to get out of his vehicle. Pennsylvania v. Mimms, 434 U.S. 106, 111 n.6, 98 S. Ct. 330, 333 n.6 (1977). The officer may also ask for consent to search without exceeding the permissible scope of a traffic stop. See Simmons, 172 F.3d at 778. Here, Det. Viar immediately asked for and received consent to search; thus, his request for consent did not prolong the duration

9

of the stop. The detective's failure to issue a citation or warning for speeding also did not increase the scope or duration of the stop. At most, the detective's conduct indicates that his real motivation for the stop was not speeding -- an irrelevant fact, as discussed above.

For the stated reasons, I conclude that Det. Viar did not exceed the scope of a permissible traffic stop.

### 4.   Defendant's remaining arguments are without merit

Under the subheading, "[Defendant's] Subsequent Consent To Search Was Involuntary," Defendant argues: (1) he did not give consent; (2) any consent was involuntary because the detention was unlawful; and (3) the search exceeded the scope of the alleged consent. (Doc. 53 at 12-13).

As an initial matter, I find that Det. Viar asked Defendant if he could search the car, and Defendant responded, "Go ahead."

Where the validity of a search rests on consent, the Government has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given. Florida v. Royer, 460 U.S. 491, 497, 103 S. Ct. 1319, 1324 (1983). The Government also bears the burden of proving that the consent was not a mere submission to a claim of lawful authority. Id. In deciding whether the Government has

met its burden, the court must consider the totality of the circumstances. Schneckloth v. Bustamonte, 412 U.S. 218, 234 n.15, 93 S. Ct. 2041, 2051 n.15 (1973). "In order for consent to a search to be deemed voluntary, it must be the product of an essentially free and unconstrained choice." United States v. Garcia, 890 F.2d 355, 360 (11th Cir. 1989).

In this case, Det. Viar did not draw his weapon, make any threats, or use any force. He did not touch the Defendant and did not make any promises. Once the dog sniff had begun, Defendant did not object or tell Det. Viar to stop. Under the totality of circumstances, I find that Defendant's consent was freely and voluntarily given.

As discussed above, I conclude that the detention was lawful, and therefore the consent did not flow from an unlawful detention.

With regard to the scope of the search, Defendant argues that the officers exceeded the scope of Defendant's consent through the use of a drug dog and by tearing out the seats of his vehicle. The Government presented evidence that the narcotics detection dog was well-trained and qualified to detect the odor of narcotics. Defendant does not dispute the qualifications of the dog.

It is not clear whether Defendant is challenging the use of the dog to sniff the exterior of his car. Assuming that he is making such a challenge, the use of the dog in that manner did not implicate the Fourth Amendment. See Illinois v. Caballes, 543 U.S.

11

405, 408-09, 125 S. Ct. 834, 837 (2005) (holding that a canine sniff of the outside of a car for drugs is not a search subject to the Fourth Amendment). Even if consent were required, Defendant's consent was not limited, and was sufficient to allow the minimally intrusive sniff of the outside of his vehicle. See United States v. Woods, 445 F. Supp. 2d 1328, 1332-33 (M.D. Ala. 2006) (finding that officers reasonably concluded that defendant's consent to a search of his vehicle included consent to a canine search of the interior of the vehicle). The dog sniff did not unreasonably prolong the detention because consent was obtained immediately after the stop, and once a person provides consent to search, the clock re-starts for purpose of evaluating the reasonableness of the duration of the traffic stop. United States v. Hernandez, 418 F.3d 1206, 1209-10 (11th Cir. 2005).

Once the dog alerted to the presence of drugs in the vehicle, Det. Viar had probable cause to believe that the vehicle contained drugs. See United States v. Anderson, 367 F. App'x 30, 32 (11th Cir. 2010) (stating that "probable cause arises when a drug-trained canine alerts to drugs"); see also United States v. Banks, 3 F.3d 399, 402 (11th Cir. 1993) (same); United States v. Tamari, 454 F.3d 1259, 1265 (11th Cir. 2006) (same). Under the automobile exception to the requirement for a search warrant, if a vehicle is readily mobile and there is probable cause to believe that it

AO 72A
(Rev.8/82)

contains contraband, officers may search it without a warrant. <u>Pennsylvania v. Labron</u>, 518 U.S. 938, 940, 116 S. Ct. 2485, 2487 (1996).

Here, the Defendant's vehicle was obviously mobile, and the dog alert provided probable cause. Thus, Det. Viar had the authority to search the interior of Defendant's vehicle without a warrant. Moreover, the probable cause gave Det. Viar the right to search "every part of the vehicle and its contents that may conceal the object of the search." <u>United States v. Ross</u>, 456 U.S. 798, 825, 102 S. Ct. 2157, 2173 (1982). Thus. the search which involved searching for hidden compartments in Defendant's vehicle was permissible and did not violate the Fourth Amendment.

## B.   Motion to Sever

Defendant Berkley moves to sever his trial from the trial of his co-defendant, Fernando Garcia-Saucedo. (Doc. 24). In the superseding criminal indictment (Doc. 31), Defendant Berkley is charged with drug trafficking and weapons charges all allegedly occurring on April 14, 2013. (Counts 2, 3, and 5). In a separate count (Count 4), Co-Defendant Garcia is charged with drug trafficking on April 15, 2013. In Count 1, the two defendants are charged with conspiring with each other.[2]

---

[2] The superseding indictment was filed after Defendant submitted his motion to sever. Count 1 of the original indictment did not charge the two defendants with conspiracy.

13

Defendant Berkley alleges that he is improperly joined with Co-Defendant Garcia.  However, the facts alleged in the criminal complaint imply (and show that the Government will attempt to prove) that Defendant Berkley received the drugs found in his vehicle on April 14, 2013 from a residence occupied by Co-Defendant Garcia. (Doc. 1 at 5-7). When officers searched Co-Defendant Garcia's apartment the next day, April 15th, they recovered approximately 55 kilograms of cocaine concealed in a bathroom vanity.  (Doc. 1 at 8).  Thus, the Government has alleged and will allege that the two defendants participated in the same series of acts or transactions constituting an offense or offenses.  This allegation makes joinder proper under Rule 8(b) of the Federal Rules of Criminal Procedure.

Defendant Berkley further argues that "[b]ecause the defendants do not share any of the same counts in the indictment nor are they charged with conspiring with each other, the possibility that evidence introduced against one defendant would tarnish the other defendant is too great to justify a joint trial."  (Doc. 24 at 1).

Fed. R. Crim. P. 14 allows for severance if it appears that a defendant will be prejudiced by a joinder of offenses or defendants.  "[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from

14

making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539, 113 S. Ct. 933, 938 (1993). Generally, defendants who are jointly indicted should be tried together. See United States v. Morales, 868 F.2d 1562, 1571 (11th Cir. 1989). The rule also applies to coconspirators. United States v. Leavitt, 878 F.2d 1329, 1340 (11th Cir. 1989) ("In a conspiracy case, coconspirators should usually be tried together; the fact that a defendant only participated in one aspect of the conspiracy does not by itself warrant severance.").

Here, there is no reason to believe that the jury will not be able to follow the trial judge's instructions and appraise the independent evidence against each defendant. Thus, a severance is not warranted.

### III.  CONCLUSION

In sum, I **RECOMMEND** that Defendant's Motion to Suppress (Doc. 23) be **DENIED**; and also that Defendant's Motion to Sever (Doc. 24) be **DENIED**.

There are no pending matters before me, and I am aware of no problems relating to the scheduling of this case for trial. It is therefore **ORDERED AND ADJUDGED** that this action be declared **READY FOR TRIAL**.

AO 72A
(Rev.8/8
2)

It is so **ORDERED** and **RECOMMENDED**, this 12th day of November, 2013.

_____
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE