IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | 1:13-cr-157-WSD-01 |
| JASPER JOHN BERKLEY, | |
| Defendant. | |

**OPINION AND ORDER**

This matter is before the Court on Magistrate Judge Gerrilyn G. Brill's Final Report and Recommendation ("R&R") [55] recommending the denial of Defendant Jasper John Berkley's Motion to Suppress Evidence [23] and Motion for Severance of Defendants [24].

**I.   BACKGROUND**

In a superseding indictment filed on July 16, 2013, Defendant Jasper John Berkley ("Berkley" or "Defendant") was charged with conspiracy to distribute a controlled substance, in violation of 21 U.S.C. § 846 and 841(a) and (b); two counts of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 846 and 841(a) and (b); possession of a firearm in furtherance of a drug trafficking crime, in violation of 21 U.S.C. § 846 and 841(a) and (b); and,

possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g) and 924(a). Defendant Fernando Garcia-Saucedo is alleged in the superseding indictment as Defendant's co-conspirator. Defendant moves to suppress evidence seized from a Buick Lacrosse that he was driving on April 14, 2013. Defendant also moves to sever his trial from that of his co-defendant Garcia-Saucedo.[1]

On April 14, 2013, DeKalb County Police Department Detective Ronnie Viar ("Det. Viar") was patrolling in his marked police vehicle. (R&R at 2.) Det. Viar was assigned to assist narcotics detectives in their investigations. (Id.) Det. Viar is a trained handler of a narcotics detection dog ("K-9") named "Basa." Basa was with him in the patrol car on April 14, 2013. (Id.) Det. Viar and Basa are certified through the National Narcotics Detection Dog Association to detect marijuana, cocaine, heroin, and methamphetamine. (Id.)

At about 10:00 p.m., narcotics detectives asked Det. Viar to determine if probable cause could be identified to stop a 2008 Buick Lacrosse that would be driving south on Interstate 85 in DeKalb County. (Id.) The narcotics detectives provided Det. Viar with identifying information for the Buick. (Id.)

Det. Viar spotted the Buick traveling south on Interstate 85 and pulled

---

[1] The parties did not object to any specific facts set out in the R&R, and finding no plain error in the Magistrate Judge's findings of fact, the Court adopts them. See Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993).

behind it to "pace" the Buick, to determine how fast it was going. (Id.) Det. Viar described pacing as a speed determination technique that involves driving a short distance behind another vehicle, and at the same speed, to determine the speed of the vehicle being followed. (Id. at 2-3.) Det. Viar paced the Buick for a couple of miles and concluded that it was traveling at a consistent speed of 70 miles per hour in an area where the speed limit is 55 miles per hour. (Id. at 3.)

Det. Viar stopped the Buick as it exited Interstate 85 onto Interstate 285.[2] (Id.) Det. Viar got out of his car, approached the Buick, and asked the Defendant for his driver's license. He told the Defendant that he had been stopped for speeding.[3] (Id.) For safety reasons, Det. Viar asked Defendant to step out of the Buick and stand on the side of the road. (Id.) Det. Viar asked Defendant if he had any drugs in the his car. Defendant said that he did not. (Id.) Det. Viar asked Defendant if he could search the Buick, and Defendant responded: "Go ahead." (Id.)

Det. Viar had Basa conduct an open-air sniff around the exterior of the Buick. (Id.) Basa alerted on the driver's side door, indicating the presence of the

---

[2] After the stop was made, DeKalb County Police Officer Mark Taylor, who also was following the Buick, stopped and was present at the stop, although Det. Viar took the lead role in the stop and subsequent search.

[3] Defendant was not the registered owner of the Buick.

odor of a controlled substance. Det. Viar turned the Buick off, placed Basa inside the car, and commanded her to search the interior of the vehicle. Basa next alerted on the floor behind the center console. (Id.) Det. Viar returned Basa to his patrol car and began to search the Buick. (Id. at 3-4) Drugs were not visible in the vehicle. (Id. at 4.)

Det. Viar then called a sergeant involved in the narcotics investigation to ask if the sergeant wanted him to do a more in-depth search, considering that Basa had alerted on the car. (Id.) The sergeant confirmed that Det. Viar should search the entire vehicle. (Id.) Det. Viar began searching for a hidden compartment, eventually discovering one. In the compartment, which was behind the backseat armrest, Det. Viar discovered illegal drugs and a gun under a sheet of plastic. (Id.) Defendant was placed under arrest. (Id.) The time between when Det. Viar pulled the Buick over and when the drugs and gun were discovered was approximately twenty minutes. (Id.)

On November 12, 2013, Magistrate Judge Brill issued her R&R recommending that the motions to suppress evidence and to sever be denied. Assuming, without deciding, that Defendant had standing to contest the warrantless search of the Buick, Magistrate Judge Brill found that Det. Viar had probable cause to stop Defendant for speeding, that he did not exceed the scope of

a permissible traffic stop because Defendant freely and voluntarily consented to the search, and the K-9 alert to the presence of drugs gave probable cause to expand the search.  (Id. at 6-13.)  Magistrate Judge Brill also concluded that joinder of the two defendants in the same trial is proper because the Government "has alleged and will allege that the two defendants participated in the same series of acts or transactions constituting an offense or offenses."  (Id. at 14.)

On November 27, 2013, Defendant filed his Objections to the Report and Recommendation.  In it, he reasserts the arguments previously presented in his initial briefs in support of his motions.  On December 5, 2013, the Government filed its Response to Defendant's Objections.

## II.   DISCUSSION

### A.   Legal Standard

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject or modify a magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59; Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983).  A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  This requires that the district

judge "give fresh consideration to those issues to which specific objection has been made by a party." Jeffrey S. v. State Bd. of Educ. of Ga., 896 F.2d 507, 512 (11th Cir. 1990) (internal quotation marks omitted).  With respect to those findings and recommendations to which objections have not been asserted, the Court must conduct a plain error review of the record.  United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983), cert. denied, 464 U.S. 1050 (1984).

 B. Analysis

  1. *Motion to Suppress Evidence*

The Magistrate Judge concluded that Defendant has standing[4] to challenge the stop of the Buick, and, assumed, without deciding, that Defendant has standing to challenge the subsequent search of the Buick.  The parties did not object to these conclusions and the Court finds no plain error in these findings and conclusions.  See Brendlin v. California, 551 U.S. 249, 255 (2007) (A person is seized when the vehicle in which he is riding is stopped by the police, and may challenge that seizure without a showing that he is in lawful possession of the vehicle).

---

[4] The Supreme Court has disapproved of the term "standing." Rakas v. Illinois, 439 U.S. 128, 139-40 (1978).  Nevertheless, to be consistent with the terminology used by the parties, the Court will use the word "standing" as a shorthand term for "existence of a privacy or possessory interest sufficient to assert a Fourth Amendment claim." United States v. Daniel, 982 F.2d 146, 149 n.2 (5th Cir. 1993) (citation omitted).

Defendant does object to the Magistrate Judge's conclusions that Det. Viar had probable cause to stop the Buick for speeding and that Det. Viar did not exceed the scope of a permissible traffic stop and search.[5]

"Under the Fourth Amendment, a decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation occurred, . . . and an officer's motive in making traffic stops does not invalidate what is otherwise objectively justifiable behavior under the Fourth Amendment." United States v. Simmons, 172 F.3d 775, 778 (11th Cir. 1999) (citing Whren v. United States, 517 U.S. 806, 810 (1996)) (internal quotation marks and other citations omitted). Det. Viar's subjective motive—to stop a specific car at the request of narcotics investigators to assist in their investigation—is not the issue. The issue is whether there was probable cause to believe a traffic violation had

---

[5] The Court notes that Defendant's objections are nearly identical to the arguments raised in Defendant's Post-Hearing Reply Brief [53], and do not satisfy the objection requirements that a party must present specific findings or conclusions to which Defendant objects. Heath v. Jones, 863 F.2d 815, 822 (11th Cir. 1989) ("to challenge the findings and recommendations of the magistrate [judge], a party must . . . file . . . written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection"); Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988) ("Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court."). Nevertheless, the Court reviews *de novo* the issue of probable cause for the stop and the search of the Buick.

occurred to support the stop that occurred.

Det. Viar testified that he paced the vehicle for a couple of miles, and based on his pacing, concluded that Defendant was traveling at 70 miles per hour, which was fifteen miles per hour above the posted speed limit. Defendant argues that the Government's evidence is insufficient to establish probable cause because Defendant was in the middle lane traveling with the flow of traffic, Det. Viar did not use a radar gun or other equipment to determine Defendant's speed, and he did not testify whether he had training or experience to determine speed by pacing.

"The Fourth Amendment plainly does not prohibit a law enforcement officer from pulling over a motorist for suspected speeding whenever the officer is acting solely on the basis of his visual observation." United States v. Monzon-Gomez, 244 F. App'x 954, 959 (11th Cir. 2007). An officer need only have sufficient cause to believe that a traffic law has been violated, regardless of the officer's subjective motivations. Simmons, 172 F.3d at 778. The use of radar or other speed detecting devices is unnecessary to justify a traffic stop for speeding. Id. Det. Viar relied on more than his visual observation by pacing the car and determining the speed of the Defendant's car using the speed of his own patrol vehicle. The Eleventh Circuit has concluded that an officer has probable cause to stop a vehicle for speeding based on pacing. See United States v. Rowls, 402 F.

App'x 467, 468-69 (11th Cir. 2010). Pacing is a simple to understand and execute speed detection technique and does not require special training or experience. Det. Viar had probable cause to stop the vehicle for speeding, including based on the result of Det. Viar's pacing method.

To satisfy the reasonableness requirement of the Fourth Amendment during and in connection with a traffic stop, an officer's actions must be reasonably related in scope to the circumstances that justified the stop in the first place, and the duration of the stop must be limited to the time necessary to accomplish the purpose of the stop. United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001). Defendant argues that Det. Viar exceeded the scope of a permissible traffic stop by asking Defendant to exit his vehicle, asking if there was contraband in the vehicle, asking to search the vehicle, using Basa to conduct an open-air sniff, and subsequently searching the car. (Doc. 53 at 8; Doc. 60 at 4.) These arguments are not persuasive.

Det. Viar asked Defendant to step out of the vehicle for safety reasons and it is well recognized that an officer who makes a valid traffic stop is entitled to require the driver to exit his vehicle. Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977). The officer may also ask for consent to search the vehicle without exceeding the permissible scope of a traffic stop. See Simmons, 172 F.3d at 778.

9

"[F]or consent to a search to be deemed voluntary, it must be the product of an essentially free and unconstrained choice." United States v. Garcia, 890 F.2d 355, 360 (11th Cir. 1989). Here, Det. Viar did not draw his weapon, make any threats, use any force, or make any promises in asking Defendant for consent to search. Det. Viar simply asked for consent to search to which Defendant responded: "Go ahead." Defendant did not object or tell Det. Viar not to use Basa and during Basa's sniffing process, Defendant did not ask Det. Viar to cease using the dog. Under the totality of these circumstances, the Court finds that Defendant's consent to search his car was freely and voluntarily given.

The duration of the search also was not excessive. Det. Viar asked for consent almost immediately after stopping Defendant. Once Basa alerted to the presence of drugs in the vehicle, Det. Viar had probable cause to believe that the vehicle contained drugs. See, e.g. United States v. Tamari, 454 F.3d 1259, 1265 ("We have long recognized that 'probable cause arises when a drug-trained canine alerts to drugs.'"). Probable cause also gave Det. Viar the right to search every part of the vehicle, including the hidden compartment ultimately discovered behind the backseat armrest. See United States v. Ross, 456 U.S. 798, 825 (1982) (permitting the search of "every part of the vehicle and its contents that may conceal the object of the search."). The Court concludes that Det. Viar had

probable cause to stop Defendant for speeding, that he did not exceed the scope of a permissible traffic stop because the search of the car was freely and voluntarily consented to, and the K-9 alert to the presence of drugs gave probable cause to expand the search to find hidden compartments.  Defendant's Motion to Suppress Evidence is required to be denied.

### 2. *Motion for Severance of Defendants*

The Magistrate Judge determined that joinder of the two defendants in the same trial is appropriate under Rule 8(b) of the Federal Rules of Criminal Procedure.  (R&R at 14.)  Defendant argued that neither defendant was charged with conspiring with the other and that the defendants were not charged with the same count.  The Magistrate Judge concluded that Defendant's arguments arose from the original indictment which had since been superseded.  (Id. at 13 n.2.)  In the Superseding Indictment, both defendants are charged in Count One with conspiring with one another.

In his objections, Defendant makes the identical argument that "the defendants do not share any of the same counts in the indictment nor are they charged with conspiring with each other, [thus] the possibility that evidence introduced against one defendant would tarnish the other defendant is too great to justify a joint trial."  (Def.'s Objections to the R&R [60] at 14.)  This argument

continues to ignore the operative indictment that charges both defendants, in the same count, with conspiracy. Fed. R. Crim. P. 14 allows for severance if it appears that a defendant will be prejudiced by a joinder of offenses or defendants, but that severance should only be granted "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993). Generally, defendants who are jointly indicted should be tried together. See United States v. Morales, 868 F.2d 1562, 1571 (11th Cir. 1989). This rule also applies to co-conspirators. United States v. Leavitt, 878 F.2d 1329, 1340 (11th Cir. 1989) ("In a conspiracy case, coconspirators should usually be tried together; the fact that a defendant only participated in one aspect of the conspiracy does not by itself warrant severance.").

Defendant has shown no reason that he would be prejudiced by the joinder with his co-defendant and appropriate limiting instructions, if required, will address any prejudice claimed by Defendant. The Court concludes that the joinder of defendants is proper, and Defendant's Motion for Severance of Defendants is denied.

### III.   CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Magistrate Judge Gerrilyn G. Brill's Final Report and Recommendation [55] is **ADOPTED**.

**IT IS FURTHER ORDERED** that Jasper John Berkley's Motion to Suppress Evidence [23] and Motion for Severance of Defendants [24] are **DENIED**.

**SO ORDERED** this 30th day of December 2013.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE